## WILLIAM LEROY WRIGHT V. STATE

### No. 29,439. January 22, 1958.

*George M. Hopkins, Jr.* and *L. A. Nelson, Jr.,* Denton, for appellant.

*Robert H. Caldwell, Jr.,* County Attorney, *Lee E. Holt,* Assistant County Attorney, Denton, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is murder; the punishment, 99 years.

Appellant concedes that the evidence is sufficient to support the conviction, and for this reason it will be stated briefly.

Polly Wallace testified that she was awakened early on the morning of the homicide, heard and recognized the voices of the appellant and the deceased in the next room; that the deceased said, "Please don't kill me Leroy;" that she next heard a loud noise and went out in the hall, where she stumbled over the body of the deceased.

Woody Sims, who resided across the street from the house where the deceased lived, testified that on the morning in question he heard shots being fired and saw the appellant run out of the house in which the deceased resided with a long gun in his hand.

Leonard Logan testified that on the morning in question he saw the appellant with a shotgun which he gave to the witness and admonished him, "Don't tell anybody you seen me."

Deputy Sheriff Jackson testified that he was on duty at the sheriff's office on the morning in question and that he had heard nothing of the homicide which had occurred a short while before until the appellant presented himself and said, "I guess you are looking for me." When Jackson asked what had happened, the appellant replied, "I think I killed my wife."

Following his surrender, the appellant carried the officers to Logan's place of business, where they found the shotgun about which the appellant had told them.

The appellant did not testify in his own behalf but offered witnesses who stated that they had seen the deceased and the the defendant together following their divorce and had observed no animosity between them and another witness who testified, without objection, that he had carried the appellant to the sheriff's office on the day in question and that on the way the appellant had told him that "he and his wife had had a disturbance; he had a shotgun and she grabbed for it and it went off and she fell."

Only two bills of exception are urged for our consideration. Bill of Exception No. 2 relates to that portion of the testimony of the witness Jackson wherein he related that, in answer to the appellant's statement, "I guess you are looking for me," he had said, "Well, we probably are. We usually are." The careful trial judge promptly sustained the objection to this testimony and instructed the jury not to consider the same.

Appellant's able attorneys earnestly urge that this constituted proof that the appellant was a criminal generally and that the court's instruction to disregard was ineffectual.

Among other cases appellant relies upon is Salinas v. State, 146 Texas Cr. Rep. 358, 175 S.W. 2d 253. In that case, the unsolicited answer to the question, "You have had occasion to see

and to talk to him (the appellant) ?" was, "Yes, sir, since he returned from the penitentiary." In that case, the appellant had plead guilty, and the state was under the duty to introduce only enough evidence to support the plea and assist the jury in fixing the punishment. The answer constituted a direct assertion that the accused had been convicted of a felony prior to the commission of the offense for which he was being tried. In the case at bar, the appellant plead not guilty, and the state was under the duty of producing all the evidence at its command to support the indictment. Part of that evidence was that he had confessed to the crime. Since this was an oral confession, in order to show it was admissible, the state was required to prove the conversation between the accused and the officer who later arrested him. In cases such as these, it often becomes extremely important to know exactly at what moment an accused is placed under arrest, and the words that passed between the participants furnish the key to the problem. This is probably the reason that the state offered the entire colloquy.

In a number of the other cases relied upon by the appellant, the evidence erroneously admitted was given prominence in argument of state's counsel. The record before us here does not reflect that the matter was ever again referred to after its withdrawal from the jury.

Bill of Exception No. 3 reflects that, while being cross-examined by appellant's counsel, the witness Polly Wallace stated that the officers upon their arrival at the scene of the homicide had stated they were sure it was the appellant who had shot the deceased and that they "were going to get him." The cautious trial court again sustained the objection and withdrew the testimony from the jury's consideration. Appellant contends that this constituted further proof that the appellant was "given toward violent acts and conduct" and was a criminal generally. We need not pass upon that contention because we find that on direct examination, without objection, this same witness was permitted to testify, "and they asked me did Leroy do it, and I said 'I don't know.' And they said 'Are you positive? We will get him.' " Evidence which has been introduced without objection cannot be grounds for reversal when it is again offered.

Finding no reversible error, the judgment of the trial court is affirmed.